IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



FILED
04 FEB -5 PM 3:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
FEB 05 2004

| | |
|---|---|
| UNIVERSITY COMMONS-URBANA, LTD., and CAPSTONE DEVELOPMENT CORPORATION,<br><br>    Plaintiffs,<br><br>v.<br><br>UNIVERSAL CONSTRUCTORS, INC. and RELIANCE INSURANCE COMPANY,<br><br>    Defendants. | CIVIL ACTION NO.<br>CV-99-AR-1992-S |
| * * * * * * * * * * * * | CONSOLIDATED |
| UNIVERSAL CONSTRUCTORS, INC. and RELIANCE INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>UNIVERSITY COMMONS-URBANA, LTD., and CAPSTONE DEVELOPMENT CORPORATION,<br><br>    Defendants. | CIVIL ACTION NO.<br>CV-00-AR-3149-S |

**MEMORANDUM OPINION**

The factual disputes presented by the above two consolidated cases were submitted to an advisory jury on January 29, 2004, after a five day trial. The first filed case was entitled *University Commons-Urbana, Ltd.* ("University Commons") *and Capstone Development Corporation* ("Capstone Development") *v. Universal Constructors, Inc.* ("Universal Constructors") *and Reliance*

*Insurance Company* ("Reliance"), CV-99-AR-1992-S. It was filed originally in this court on July 30, 1999, and was assigned to the Honorable Sam C. Pointer, Jr. Plaintiffs, as owners of a student apartment project at the University of Illinois, sought damages from defendants, the general contractor and its performance bonding company, for the alleged breach of the construction contract. When an arbitration clause in the contract was invoked by defendants, preempting the jurisdiction of this court, Judge Pointer stayed the case pending arbitration. His order concluded as follows:

> The Court retains jurisdiction for the purpose of confirming any arbitration award. This case, although stayed, is administratively terminated, and the stay can be lifted and the case brought to the active calendar of the Court upon motion of any of the parties.

There was no taxation of costs.

For reasons unknown to this court, the dispute was not arbitrated in Birmingham, Alabama, but in Atlanta, Georgia, before a panel of three arbitrators who were selected and who operated under the auspices of the American Arbitration Association. On August 17, 2000, after nineteen days of hearings, broken into three sessions, the three arbitrators unanimously entered an award in the amount of $2,248,648, plus interest at 12% per annum from August 15, 2000, in favor of the owners and against the general contractor and its bonding company. The owners thereupon asked this court to reactivate CV-99-AR-1992-S and to confirm and enforce the award. Contemporaneously, Universal Constructors, the contractor, and

2

Reliance, its bonding company, filed a separate suit in the United States District Court for the Northern District of Georgia, the district in which the arbitration award had been entered. They invoked 9 U.S.C. § 10, attacking the award as having been tainted by the "evident partiality" of Edward Meyerson ("Meyerson"), one of the three arbitrators. The district court in Atlanta transferred that case to this court. The transferred case, styled *Universal Constructors, Inc. and Reliance Insurance Company v. University Commons-Urbana, Ltd. and Capstone Development Corporation*, CV-00-AR-3149-S, was consolidated with CV-99-AR-1992-S, and both cases were assigned to the undersigned.

Without allowing the extensive discovery sought by the contractor and its bonding company, and without holding a full scaled evidentiary hearing, this court confirmed the arbitration award, whereupon the contractor and bonding company appealed.

In *University Commons-Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F. 3d 1331 (11th Cir. 2002), the Court of Appeals for the Eleventh Circuit reversed this court and remanded the case for the evidentiary hearing deemed necessary for arriving at a final answer to the charge by Universal Constructors and Reliance, using the critical words of 9 U.S.C. § 10(a)(2), that "there was evident partiality or corruption in the arbitrators, or either [sic] of them." Universal Constructors and Reliance did not charge "corruption," limiting themselves to a single statutory ground for

3

setting aside the award, namely, that Meyerson was guilty of "evident partiality." The opinion of the Eleventh Circuit contains a more complete procedural history than is recited herein. It sets forth enough undisputed and disputed facts to provide a full background for the controversy. It also, of course, provides the Eleventh Circuit's rationale for requiring an evidentiary hearing.

After the remand, discovery was reopened, and rather lengthy and contentious discovery ensued. Universal Constructors and Reliance belatedly demanded a jury trial. The court declined to grant a dispositive trial by jury. Instead, the court, in an exercise of its discretion under Rule 39(c), F.R.Civ.P., ordered that an advisory jury be empaneled.

Because Universal Constructors and Reliance conceded that the burden of proof was theirs, they were designated for trial purposes as "plaintiffs", and University Commons and Capstone Development were designated as "defendants." At the conclusion of plaintiffs' evidence, defendants offered a motion of judgment as a matter of law, invoking alternatively, Rule 50(a) and Rule 52(c), F.R.Civ.P., the former applying to jury trials and the latter applying to non-jury trials. A trial with an advisory jury is somewhere in between. The court took the motion under advisement. At the conclusion of all of the evidence, both defendants and plaintiffs made motions for judgment as a matter of law, and the court also took them under advisement. After closing arguments and the

court's charge to the jury, the court submitted to the jury the following three special interrogatories, to which the jury gave the answers hereinafter reflected:

> 1. Did Universal Constructors, Inc. and Reliance Insurance Company prove by a preponderance of the evidence that Edward Meyerson, while acting as an arbitrator in the arbitration proceeding involving the dispute with University Commons-Urbana, Ltd. and Capstone Development Corporation, was aware of facts comprising one or more potential conflicts?
>
> YES _____    NO __X__
>
> 2. ONLY IF THE JURY HAS ANSWERED "YES" TO QUESTION NO. 1,
>
> did Universal Constructors, Inc. and Reliance Insurance Company prove by a preponderance of the evidence that the potential conflict or conflicts found to have existed by you in answer to Question No. 1 was or were of the kind that a reasonable person would recognize as a potential conflict?
>
> YES _____    NO _____
>
> 3. ONLY IF THE JURY HAS ANSWERED "YES" TO QUESTIONS NO. 1 AND NO. 2,
>
> did Universal Constructors, Inc. and Reliance Insurance Company prove by a preponderance of the evidence that Mr. Meyerson failed to timely disclose enough information for a reasonable person to realize that a potential conflict or conflicts existed?
>
> YES _____    NO _____

These three interrogatories were lifted virtually *verbatim* from the following expression in the Eleventh Circuit opinion found at 304 F. 3d 1341:

> This standard can be further distilled into three key elements: (1) the arbitrator must be aware of the facts

5

comprising a potential conflict; (2) the potential conflicts must be one that a reasonable person would recognize; and (3) the arbitrator must fail to disclose the conflict. While we did not make it clear in *Gianelli Money Purchase Plan & Trust* [146 F. 3d 1309 (11th Cir. 1998)], it seems logical that, like the second element, the third element—whether or not the arbitrator disclosed the conflict—should be governed by a reasonable person standard. In other words, for an award to be vacated, the arbitrator must not have disclosed enough information for a reasonable person to realize that a potential conflict existed.

Universal Constructors and Reliance relied upon two alleged instances or kinds of "evident partiality" by Meyerson. The first was that Meyerson, who is a lawyer, had such a close professional relationship with Bradley, Arant, Rose & White ("Bradley Arant"), the attorneys for University Commons and Capstone Development, that a reasonable arbitration participant, if made aware of the pertinent facts surrounding that relationship, would have objected to Meyerson's acting as an arbitrator. The other was that Meyerson's revelation of the fact that he had contacts with Capstone Building Corporation ("Capstone Building"), a corporate entity with an arguably important business relationship with Capstone Development, was not timely and that those contacts expanded and became more significant during the arbitration proceedings without Meyerson's having revealed that expansion.

### Findings of Fact

The court agrees with the advice provided to it by the jury, namely, that Meyerson was not aware of facts that comprised a potential conflict of interest. Not knowing the jury's thought

6

process, one reason for the correctness of its conclusion on a determinative fact is that Meyerson had no potential conflicts that went beyond the innocuous or the illusory. Although agreeing with the jury, the court reaches this conclusion independently.

If Meyerson had chosen not to reveal that he, as an active construction lawyer, as an active arbitrator, and as an active mediator, both in the past and contemporaneously had professional contact with Bradley Arant, as well as with Smith, Currie & Hancock, counsel for Universal Constructors and Reliance, he would not have violated any code of conduct for arbitrators. The fact that he did reveal facts designed to provide an opportunity for the arbitral parties to explore such matters with him was the kind of information that was appropriate, if not necessary, for a disclosure of potential conflicts. It could not be fairly construed as an indication of "evident partiality", even if the revelations had been explored at length. The court did not ask the jury to describe the precise parameters of Meyerson's obligation to reveal his relationships, if any, with the various lawyers for the parties, but the court agrees with the implicit finding of the jury that those parameters, whatever they were, were not transgressed by Meyerson insofar as his alleged incomplete disclosure of professional relationships with Bradley Arant.

The other avenue of attack by Universal Constructors and Reliance is based on Meyerson's pre-arbitration contact with Jay

Chapman, President of Capstone Building. The facts found by this court, independent of any jury advice, and that are relevant to this issue, are:

    (a)    Capstone Building was formed by the owner of Capstone Development. From the respective inceptions of the corporations, they were separate and distinct entities with different missions.

    (b)    At the time the subject arbitration began, Capstone Building occupied a portion of the building occupied by Capstone Development and shared an entranceway, over which the single word "Capstone" was displayed.

    (c)    As a building contractor, Capstone Building largely, but not exclusively, performed work for Capstone Development.

    (d)    Meyerson had promoted his law firm to Jay Chapman, President of Capstone Building, shortly before the initial meeting between the arbitrators and the parties.

    (e)    Because of the similarity of the corporate names, and because the arbitration demand reflected that Capstone Building had been called upon by Capstone Development and University Commons to complete the work after Universal Constructors defaulted, Meyerson, at the first arbitration meeting, revealed that he had had professional contact with Capstone Building. No questions about the extent of that contact were asked, even though Meyerson offered to step down if any party felt there was a problem. Neither Universal Constructors nor Reliance interposed any objection to Meyerson's serving as an arbitrator.[1]

---

[1] The Eleventh Circuit's opinion referred to an affidavit by Ronald Robey, the attorney who represented Universal Constructors and Reliance during the arbitration proceeding. That affidavit is to the effect that Meyerson did not reveal his contact with Capstone Building until the second session of the arbitration

>    (f) After the initial meeting, Meyerson furnished an insignificant amount of legal services to Capstone Building, but not any work connected to this project.

Although answers to the second and third questions put to the advisory jury were precluded by its answer to the first question, and because the court agrees with the jury's first answer, the court does not need to make findings of alternative dispositive facts, but nevertheless does find as facts both (1) that a reasonable person who acted as an arbitrator in this case and (2) that a reasonable person who was a party to this arbitration would not have perceived either of Meyerson's alleged potential conflicts as actual potential conflicts, if all of the pertinent facts had been made known and explored in a timely fashion.

### Conclusions of Law

This court has jurisdiction over the subject matter and *in*

---

proceeding, allegedly making it untimely. Robey did not testify at the evidentiary hearing, leaving without dispute, as well as corroborated by other testimony, the fact that Meyerson, who was himself unaware of the full extent of the relationship, if any, between Capital Building and Capstone Development, revealed his contact with Capstone Building at his very first meeting with the parties. As it turned out, there was no potential conflict inherent in Meyerson's contact with Capstone Building because of the very limited relationship between the two corporate entities, but Meyerson did not know all of the facts at that time. In an abundance of caution, he outlined briefly to the parties his previous contact with Capstone Building. Because the arbitration demand mentioned Capstone Building as the contractor that had completed the work after the default by Universal Constructors, Universal Constructors and Reliance were as aware of the extent of Capstone Building's connection with Capstone Development as Meyerson was.

9

*personam* jurisdiction over the parties to these consolidated cases. The parties participated in the drafting of the pretrial order which recites that jurisdiction is based on 28 U.S.C. § 1332. The parties are admittedly completely diverse, and the requisite jurisdictional amount of $75,000 certainly exists. Jurisdiction has never been questioned although the parties arbitrated in the Northern District of Georgia rather than in the Northern District of Alabama. Nobody has questioned this court's original jurisdiction over CV-99-AR-1992-S, in which Judge Pointer retained jurisdiction for the limited purpose of confirming an arbitration award and in which the stay was lifted in order to allow consideration of whether or not to confirm the arbitration award, even though the award had been entered in the Northern District of Georgia. If this was a violation of the jurisdictional provision of 9 U.S.C. § 9, providing that "an application [for confirmation] may be made to the United States court **in and for the district within which such award was made**" (emphasis supplied), a jurisdictional challenge was never raised. Neither has there been any question about this court's jurisdiction over CV-00-AR-3149-S, the case in which Universal Constructors and Reliance sought a vacation of the arbitration award. That case was transferred by the Northern District of Georgia to this court where it became CV-00-AR-3149-S. If this transfer transgressed the jurisdictional provision of 9 U.S.C. § 10 that places jurisdiction over attacks on

10

arbitration awards in "United States district court **in and for the district wherein the award was made**" (emphasis supplied), nobody has raised it here or in the Eleventh Circuit, which, like this court, is responsible for monitoring its own subject-matter jurisdiction. Under the peculiar procedural circumstances of this case, and because subject-matter jurisdiction has never been questioned, this court finds that it does have subject-matter jurisdiction, despite the fact that a literal reading of the above-quoted jurisdictional statutes indicates otherwise.

University Commons and Capstone Development made an interesting, if unsuccessful, argument based on the following language in 9 U.S.C. § 10(a)(2):

> Where there was evident partiality or corruption in the arbitrators, **or either of them**.

(emphasis supplied).

They argued that the word "either" refers back to "evident partiality" and "corruption" and not to the plural word "arbitrators." They contended, with some degree of logic, that Congress knows that arbitrations are never conducted by two arbitrators and that Congress is presumed to know that the word "either" can never refer to one or three. There are two problems with an argument that would always limit "either" to a reference to "two". The first is that Congress used the disjunctive word "or" in § 10(a)(2) to connect "evident partiality" and "corruption". This alternative conjunction would make the subsequent word

11

"either", employed by Congress in application to these two things a redundancy. Congress is less capable of redundancy than it is of grammatical error. The second is, of course, the Congressional predilection for grammatical error, although perhaps not as bad an error as its use of "either" in this case. The intended word, and the only proper word under the circumstances, was "any" and not "either." Congress necessarily intended to say: "Where there was evident partiality or corruption in the arbitrators, or **any** of them" (emphasis supplied). The strained interpretation of 9 U.S.C. § 10(a)(2) offered by University Commons and Capstone Development would have led this court to the erroneous conclusion that Universal Constructors and Reliance had the burden of proving "evident partiality" by more than one of the arbitrators. Even if the court had been tempted to adopt this interpretation of 9 U.S.C. § 10(a)(2), without reference to the opinion of the Eleventh Circuit, such an interpretation is foreclosed by the law of the case. The Eleventh Circuit focused exclusively on the conduct of Meyerson and never hinted that the parties who were attacking the award had to prove that a majority of the arbitrators was "evidently partial".

   The advisory jury was instructed quite correctly that an arbitration award under the Federal Arbitration Act is presumed to be correct, binding and enforceable. This is why the burden is upon the unsuccessful party to the arbitration proceeding to prove

12

by a preponderance of the evidence the existence of one or more of the narrowly defined statutory reasons catalogued in 9 U.S.C. § 10 for setting it aside. In this case, Universal Constructors and Reliance have simply failed to meet this burden.

### Conclusion

Based on the foregoing findings of fact and conclusions of law, a separate order will be entered denying the application of Universal Constructors and Reliance to vacate the arbitration award and instead confirming the award.

DONE this 5th day of February, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

13